The next case on the calendar is United States v. Green. All right, Mr. Lickman, whenever you're ready to go. Thank you, Judge. I'm Jeffrey Lickman and I'm here for Appellant Alex Green. I'm just going to be handling the jurisdictional question, the Kiffer point, for three minutes and then turn it over on the constitutional issues to my co-counsel. May it please the Court. It's been 51 years since the passage of the Controlled Substance Act, which included marijuana in its Schedule I. As noted in the 1973 Kiffer case, and this is back in 1973, it's apparently true that there is little or no basis for concluding that marijuana is as dangerous as a substance as some of the other drugs included in Schedule I. That was 1973. It's been 46, 51 years, excuse me, since that time, and I don't think anybody could have predicted that marijuana, with all the advances in medical science that have shown that it can be used for medical purposes, it's now been deemed for medical purposes legal in the majority of the states in the country. It's deemed legal for recreational use in about 20 states. Nevertheless, all these years later, there hasn't been a single change by the DEA to reschedule this drug. I think the question is, assuming all that's correct, the question is how do you go about attacking it as a defendant here? What's the route to correct what you see as a mistake within the bounds of this case? Your Honor, obviously this has to be handled by the circuit in a criminal case. It's not a situation where it's a civil matter and theoretically there could be exhaustion that could go through. Because it's a criminal case and because it's noted in McCart as noted in Kiffer, you can't wait nine years for an application to be made when somebody's indicted who wants to challenge the constitutionality of this classification. So at this point, there's really no choice, I think, except for the circuit to step in and do something. Because otherwise, we could be here in 50 more years, I mean, I don't think anybody could have imagined that 50 years ago that marijuana was already shaky on shaky ground in Kiffer, that we would be here 50 years later and there'd be no change at all. So if it doesn't come from the circuit, it doesn't appear that it's ever going to come. So respectfully, I think what has to be done is the court needs to act, determine that this was an arbitrary determination to place it in Schedule I. It was certainly, I thought, arbitrary 50 years ago, it's even more obviously arbitrary now, and decide to, I don't think you can reschedule, but I think that you can deschedule and force, there will be perhaps a period of time in which it's hanging out in limbo and then the DEA, the Attorney General, will finally have to act and schedule it appropriately. Certainly the government makes a fair point, but we're not claiming that it's not criminal. Are we applying a rational basis test here according to you? Judge, I'm going to let him handle that part. I apologize only because he came all the way from Rochester for that. I just want to ask one question before we talk about rational basis. In terms of the impact on your clients of the rescheduling, it's just a difference of the statutory maximum, right? It's not a decriminalization issue, right? That's absolutely accurate, and that's why the liberty interest exists, because it's not, just because the guidelines are the same, regardless of whether it's based on the weight, it doesn't change the fact that there are statutory maximum differences in Schedule I, III, IV, and V. But it would have no practical impact on your client in this case, I guess is the point, right? That's obviously the practical impact, and of course if the drug is descheduled, then there's a windfall, and I suppose it doesn't have any charges at all. Right. All right. Thank you, Mr. Lichtman. Thank you. All right, Mr. Green. He saved it for you. Yes, I'm William Easton from Rochester, and I represent Charles Green here. I represented him below in the Western District as well. In getting to the question posed to Mr. Lichtman, which he generously deferred to me, the rational basis is really what the standard, what we're asking, we're not asking for, we concede that would be the argument. Let me ask you, this is what I don't understand, though. I understand the evidence regarding the medical use of marijuana, but I think your argument to us is, if that is true, that then the classification lacks a rational basis. I don't understand that. The District Court noted there could be many, many other reasons for the classification other than just the issue of whether or not there could be a medical use for it. So help me understand that, why we can't look at all the other reasons why the DEA would want to continue to classify it, even if there's a medical use. Well, I think that that was the District Court's position, is that even assuming, as she found, that there's certainly currently accepted use of marijuana in the United States, is that the argument the Court's advancing is that, well, if there's any conceivable basis that marijuana should fall in Schedule I, next to heroin and LSD, any conceivable basis, even if it doesn't meet the statutory definitions of a Schedule I, then that's sufficient. We would argue that if our argument was marijuana should be decriminalized, which is an argument we didn't advance, it is a robust argument that we had, but it's not our argument, and if it was decriminalization itself, then the record could be searched, and if Congress had any conceivable basis to criminalize marijuana, then you could look outside the statute and outside the text and find a rational basis, but that's not at issue here. It's the definition of Schedule I. If marijuana doesn't meet the Schedule I definition, to allow a court then to say, well, yeah, it doesn't meet Schedule I, we're going to treat it as Schedule I because of some non-statutory reason, we don't think that would be proper. It has to meet... Well, it's not a non-statutory reason. There's other reasons in the statute, right? There are three different reasons given, right? Correct, but they all have to be, for Schedule I, they all have to be met. For Schedule II, III, and IV, there's certain configurations, and if you take out the current acceptance prong, which is what we focused on, marijuana clearly is not Schedule I and is different from the other Schedule I, radically different from the other Schedule I substances, which heroin and LSD in particular, that don't have an accepted... current accepted use in medical treatment. And at this point, it's not a matter of scientific opinion, it's not a matter of debate, it really is almost arithmetic. It's been accepted in the majority of states. By the time of the decision here, it was accepted in 29... well, 28 states and D.C., and it's gone up, as we put in our brief, I think we're at 36 or 37. And it's accepted. Certainly, if Congress today were to look at marijuana and, you know, determine what Schedule it falls in, it would be hard-pressed to say, well, it falls in Schedule I, even though it doesn't meet the definition of Schedule I, because... No, but under your view of the law, if there's any medical use for marijuana, a single medical use, then it has to remove from the Schedule, right? That's your argument. Yeah, reduced to its extreme, that's the argument. The statute says no current acceptance. Right. So if there was one medical outside use of the drug, that would be... then you say it's gone. Under rational review, it's gone, right? Yes, I don't think... I think, theoretically, yes, but we were at 29 states, we were at a majority of states when this argument was made. So we made the argument in the context of the majority of states accepting it, allowing its prescription, doctors allowing its prescription, its widespread use, and so when, you know, theoretically, it has to have no current acceptance. I understand the court's point. Theoretically, if one state had accepted, it would fall under that, but we're so far over that that that's why the rational basis standard, I think, we surmount. Well, you would concede, I think, if we don't read it the way you're suggesting, then there would be a rational basis. If you could consider all the other things that the district court pointed to, you know, psychoactive effects, that can lead to behavioral impairment, the risk to minors, decrease in IQ, you know, it's a long list. You would agree that there would be a rational basis if we didn't limit it to the issue of whether it has a medical use or not, right? Well, yes, but I think that, you know, at that point, I think we need a hearing. What is the basis? If it doesn't fall in Schedule I on a statutory basis, but it does because its impact on adolescents or prenatal is such that it should be, I think there should be a hearing on that, which... Well, we didn't have a hearing in Kiefer, right? Yes. There was a hearing in Kiefer? There was a hearing in Kiefer. But if you have the burden of showing no conceivable state of facts that could provide a rational basis, why would we waste the district court's time with a hearing if there is some evidence about medical use? Like, why would you have that hearing on all these other issues when it's pretty clear that that standard couldn't be met, right? Well, I don't think the hearing would be required on medical use because, I don't know, the judge concedes that it's being used in medical treatment in the United States in a widespread manner, and a hearing wouldn't accomplish anything there. But the hearing would be, well, she's saying it has to be treated as a Schedule I. It's not irrational to treat it as a Schedule I for other policy reasons that marijuana is uniquely... is dangerous or opposes the danger, which I believe is... I think misses the mark in terms of... Well, so do other substances. I mean, cocaine and fentanyl and methamphetamines, they all, you know, in Schedule II, III, and IV, there are certainly, you know, dangers of adolescent use that I think are much more extreme than marijuana. The other danger in the approach of any conceivable basis for classification, even non-statutory, it would create two classes of drugs under the CSA. And the Oakland Buyers Club that we cite says you can't... The Supreme Court says you can't do that. It's the same thing. If you're Schedule I, you're Schedule I. Doesn't matter if you found yourself in Schedule I from the initial classification or whether it's an attorney general determination to the DEA. Schedule I is Schedule I, and we can't have an artificial distinction between those that are later reclassified and the judge finds non-statutory reasons to put it on Schedule I. All right, thank you, Mr. Easton. I know he deserves some time for rebuttal. Thank you. Okay, we'll hear from the government. Good morning, Your Honors, and may it please the court. My name is Sean Eldridge. I'm an assistant United States attorney for the Western District of New York. I represent the government on this appeal, and I represented the government towards the latter end of the proceedings in the district court below. First, I'd just like to say it's great to be back here in person as well. Applying rational basis review, Judge Wolford correctly denied the Green Brothers' constitutional challenge to marijuana's status as a Schedule I-controlled substance. And while much of the arguments below centered around the statutory criteria for Schedule I, the elements, as Judge Wolford pointed out, of that statute don't define its constitutionality. Rather, this court, as Judge Bianco pointed out, applies the rational basis test where Congress's acts are presumed valid and will be found valid unless the statute has no rational relationship to a legitimate government purpose and legislative purpose, excuse me. And Congress can choose to draw lines that can be imperfect. They can choose one side of the debate over another as long as there is some conceivable basis for the law. And here there are many. As was previously noted, Judge Wolford pointed out many public health and safety concerns, including what's noted in the 2016 DEA denial petition that's in the record, which cites psychoactive effects that can lead to behavioral impairment, decrease in IQ and mental performance, and that is the most commonly used illicit drug among Americans age 12 and over. And in order to convince this court on rational basis review that that scheduling is unconstitutional, the Greens have to negate every... I take it that there are many, many states that are acting irrationally nowadays. No, Judge, I'm not prepared to say that those states are acting irrationally, but they're doing a quintessential legislative function. And that's exactly what Congress has done here, too. They are entitled to choose one side of the facts, one side of the debate, if you will, over another. And it's understandable that different states will come to different determinations, especially in what I think everyone would agree is a changing area. Is there new research on the efficacy or dangerousness of marijuana? Absolutely. And in fact, the 2016 DEA publication in the Federal Register makes note of that. And I think they even... I know they note that they're even making increased funding available for marijuana testing. Those are choices that are intensively fact-laden, intensively health-laden, and are quintessentially for the legislature to make in the first instance. On that debate, Your Honors, the Green brothers here, their own submitted declarations from their two proffered experts, just show that that debate is ongoing and is continuing. One of their experts, Dr. Hart, specifically says, this is at 886 of the record, that marijuana's risk of addiction is presently disputed within the medical and scientific community. Dr. Pappone, their other expert, at page 120... Excuse me, page 109 of the record, says that in a survey publication that the majority, the majority, agreed that there were significant physical and mental health risks, 61% and 64% with marijuana use, and that only a minority of physicians surveyed disagreed at 18% and 15%. So with this ongoing debate, Congress's choice cannot be irrational. And for the court to find that Congress's choice is indeed irrational, again, the defendants would have to demonstrate that there is only one supportable point of view regarding marijuana's safety, addiction risk, medical use, and that's just not the case. Their argument on that is that... This goes back to the issue of 811. They would say, as it relates to medical use of marijuana, that there is no debate anymore, that every expert acknowledges there may be other, you know, issues, but nobody is proposing at this point that there's not medical use of the marijuana, right? So, Judge, I want to be careful how I answer that question. Are there some places in the country where marijuana is being used in some type of a medical capacity? I think it is. I think we would all agree that. But there's a difference between what we're talking about under the criteria under Section 812. And again, putting aside that the government's view is viewing it through the lens of 812 is not the right lens to look at for the constitutionality. But just to engage on the 812 point, as the DEA and the federal regulations describe, to say that the B criteria, that the drug has no currently accepted medical use in treatment in the United States, doesn't just mean that somebody is using it somewhere. There's a list of five factors that include having the drug's chemistry being known and reproducible, that there have to be adequate safety studies, that there have to be adequate and well-controlled studies proving the efficacy, that the drug has to be accepted by qualified experts, which, under the regulations, mean that there's a... Are those criteria that we have to apply? I'm sorry, Judge, are those criteria... I don't blame you. Are those criteria that we, as a court, have to apply? That you have to apply? I don't think you even look at them here because we're on rational basis review. So if you were... So the five elements that you're ticking off really are not relevant to what we're doing. That's... Yes, Judge, because those are the factors that the DEA would look at on a rescheduling petition. And that's really what the conflation of the issue here is. I think the Greens' challenge, although couched as a constitutional challenge, is really just a poorly disguised rescheduling or, in their view, descheduling petition because they want the court to look at the factors that DEA would have to look at, including FDA and HHS because that's who does the medical studies that then go to DEA. They want the court to focus on those while couching it in constitutional language. And those two just don't mix. The constitutional analysis is different than the statutory analysis. But even on the statutory analysis, for the reasons that I was ticking off and that we articulated in the brief, it still fails there as well. Can you address the issue of an evidentiary hearing? I think, as you've seen, some courts, some district courts, seem to have hearings. So what's the government's position on when, if ever, a district court should have an evidentiary hearing? Not on an issue with regard to the reclassification, but in a criminal case, such as this. So, Judge, I would say that when there are the immediate standard that jumps to my mind, I think of suppression hearings, when there are material facts that are in dispute that would make a difference in the outcome of the determination. And then, of course, this court would review that on an abuse of discretion review. And as Judge Wolford pointed out below, there would be no point in a hearing. In fact, the defense's own experts just show that, at best, there is a dispute in the scientific community which would preclude on the constitutional review them winning the argument that there's no conceivable rational basis. So, if they were able to negate those positions, I think they could potentially be entitled to a hearing. And in any event, as Judge Wolford and Magistrate Judge Feldman below pointed out, Dr. Hart, one of the experts there, had testified in the California matter, which is cited extensively throughout the party's submissions and which is also referred to in there. In fact, I think one of the suggestions from Judge Wolford at the end was even if we do need a hearing, could I just basically take a look at the submissions that were made in the California case, and everybody agreed that that would be sufficient if they could also potentially put in their own affidavits, which they did with the affidavits from Dr. Capone and Dr. Hart. Let me just make sure I understand it. The defense counsel consented to having Hart consider things from other cases? Is that what you just said? Judge, as I recall, the end of the oral argument on the objections to Magistrate Judge Feldman's report and recommendation, one of the questions I recall from the transcript is Judge Wolford essentially asked something to the effect of if I do think I need to have a hearing, could I just go look at the transcripts from the hearing that it literally just concluded a couple months before in the California case where Dr. Hart had testified and the parties had assented to that, I think with the caveat that if they could also make an additional submission of an affidavit or that if they needed to. Now, Judge Wolford ultimately determined that she didn't need to have a hearing and that it was essentially a foregone conclusion, but that's my recollection of the end of the oral argument and what Judge Wolford held. Just to rapidly running out of time, I just want to talk briefly about the penalty provisions because that was raised before. The reality is that the penalty provisions for marijuana are much less severe than virtually almost any other drug, or certainly at least the ones that we would commonly see in federal court prosecutions. Here, the Green Brothers pled to a charge under B1C of Title 841 that has no mandatory minimum. That was a part of the plea negotiation process, even though Mr. Alexander Green would have otherwise been subject to 5 years and a 10 year because of a prior drug conviction. But in any event, the quantities of marijuana that are eligible for a B1B to trigger that are 100 kilograms of marijuana. When you compare that to the other substances, cocaine, 500 grams, heroin, 100 grams, LSD, 1 gram, and fentanyl, 40 grams, the amounts have nothing to do with their placement in Schedule 1 or 2. Three of those substances are Schedule 1, three of them are Schedule 2. They're based on the substance themselves and Congress has made those determinations and Judge Wilfred even made that clear at sentencing that in her view, the placement in Schedule 1 or Schedule 2 has nothing to do with the weight that it carries, rather the amount of the substance is pegged differently, having nothing to do with the schedules. I see my time has run out, so unless there's any other questions, we request that you affirm the district court's decision. Thank you very much. Thank you, Mr. Eldridge. Mr. Easton, I think you have two minutes. Thank you, Your Honor. In rebuttal, first, I believe Mr. Eldridge misses the mark in terms of using the defendant's experts to supply declarations in this case and did concede that in terms of marijuana's efficacy or the benefits of marijuana, there is some debate, but that's not the statutory standard. We have a constitutional challenge on Prong 2, which is is there current acceptance? There can be acceptance and there can be debates on whether it should be accepted. There can be debates on whether it's truly beneficial. One-sided, we would submit, but there can be a debate on that. But there really can't be a debate on acceptance. It's accepted. And at the time of Judge Wolford's decision, it had been accepted by a majority of the states and was being dispensed regularly, prescribed regularly for a variety of physical ailments and it was accepted use in the United States. And it seems to me despite the government's best efforts, there can't be any debate on that. The debate about whether it should be accepted is not the statutory definition. I don't understand why you're saying that's the standard, whether it's quote-unquote accepted. If there are several dozen states that have either legalized it or allowed medical use, that doesn't necessarily mean that the federal government doesn't have a conceivable basis for keeping it at a Schedule I for other reasons that we've talked about, right? The acceptance becomes the standard. That we think because it's a definitional component of a Schedule I that you can't call it a Schedule I if it doesn't meet the definition of Schedule I. There's nothing in nature that says there's a Schedule I. Won't that be handled in the reclassification litigation if that's true? If the ultimate constitutional challenge came up, it could be, but we believe that the Greens were entitled to make that challenge in a criminal context and have a ruling on it from this court in the crime. This court has now ruled on it. That determination is made by another circuit, the D.C. Circuit, determines those challenges which have to date not been fruitful. No court though, every court that's addressed this issue has sided with the government as to the question of whether or not those criteria for the purpose of a rational basis review challenge are guidance to an agency as opposed to what should be utilized for determining whether or not there's a rational basis. They've all gone the other way, right? Yes, but there's not that many. Including the 8th Circuit, I think. The 8th Circuit. I forget the name of the case, but it's specifically said. Colberti, it's an old case, 1982, and we think at that point currently the record was different. 1982 you didn't have this absolutely burgeoning number of states accepting its use and I think it was decided in that context. I don't think it's binding on this Court. It's old and it was, you know, the 8th Circuit didn't have Kiffer and so they weren't bound by it. You know, I think that Mr. Lichtman focused on where we were in 1973. You know, the court in Kiffer at the end, they concluded that their decision by saying, you know, okay, we're going to keep it Schedule I. They expressed really a lot of concern whether marijuana really belonged there but said, you know, let it be and the case concludes with flexibility and receptivity to the latest scientific information is to be the hallmarks of its approach in terms of declassification and I think it's fair to say that, you know, Kiffer is now approaching 50 years and we haven't moved an inch. There's a paralysis for some reason and it's complicated that DEA and the Attorney General Everything you say is true. The question is whether it is for us to do something about that in the context of this appeal. And I understand the point and I think Kiffer says it is. At some point it becomes a question that the administratively the equal protection through process constitutional claims are for the court ultimately to decide and this is an extreme case Kiffer didn't really open the floodgates for cases. There haven't been that many. This is extreme. We've reached a point where at this time so many states have basically legislated its use. It's being used widespread in our country for medical purposes and it's doctors and patients and prescribers have accepted it. Legislatures have accepted it. Mr. Eldridge misses the mark saying well there's contrary Congress can take a contrary position they could but their standard was if it's accepted then it doesn't qualify and I think even under Congress' definition it truly is not a Schedule I. It should be declassified or at a minimum reclassified as Schedule V which is the lowest one because they have not done anything for 50 years and I believe at this point that would be an appropriate remedy. Thank you Mr. Easton it was our decision. Thank you. Have a good day.